IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHELIA MARTZ            PLAINTIFF

V.            NO. 15-5239

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Sheila Martz, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.  Procedural Background:**

Plaintiff filed her current application for DIB on April 1, 2013, alleging an inability to work since March 1, 2013, due to epilepsy. (Doc. 12, pp. 140-141, 171, 175). An administrative hearing was held on January 22, 2014, at which Plaintiff appeared with counsel, and she and her husband testified. (Doc. 12, pp. 29-65).

By written decision dated April 16, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe –

1

epilepsy. (Doc. 12, p. 18). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 12, p. 19). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders or ropes, but can occasionally climb stairs and ramps. The claimant must avoid hazards, including unprotected heights and heavy moving machinery. The claimant is limited to simple, routine, and repetitive tasks in a setting where interpersonal contact is incidental to the work performed and can work under supervision that is simple, direct, and concrete.

(Doc. 12, p. 19). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could perform her past relevant work as a sales attendant, as well as perform other jobs, such as inspector, assembler, and housekeeper. (Doc. 12, p. 22-24).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on July 31, 2015. (Doc. 12, pp. 4-8). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11). The Court has reviewed the entire transcript.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards

v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able

3

to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. § 404.1520, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

**III.    Discussion:**

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in failing to consider the observations of SSA employee M. Crouch or Plaintiff's Husband, Charles Martz; 2) Whether the ALJ erred by failing to fully and fairly develop the record; and 3) Whether the ALJ erred by failing to accord any weight to the statements of Plaintiff's treating neurologist, Dr. Michael Morse. (Doc. 10).

A brief history of the medical evidence is necessary in this case. Prior to the relevant time period, on August 21, 2012, Plaintiff's neurologist, Dr. Morse, reported that he had seen Plaintiff for a number of years for seizures. (Doc. 12, p. 259). He further reported that Plaintiff had lost her insurance and had not been able to see him. Dr. Morse reported that Plaintiff had four seizures in the past month, and prior to that, her seizures had been under excellent control on Lamictal 200 mg. bid. (Doc. 12, p. 259). Plaintiff would only have a seizure when she was non-compliant, and at that time, reported she had been compliant. (Doc. 12, p. 259). Also at that visit, Dr. Morse reported Plaintiff's muscle strength in her upper and lower extremities was normal, as was the muscle tone, and he saw no atrophy or abnormal movements. (Doc. 12, p. 260). Dr. Morse reported that Plaintiff's recent and remote memory was good, and her attention span and concentration were normal. Plaintiff had normal range of motion in her cervical and lumbar spine, had negative straight leg raise

4

bilaterally, and had no extremity edema, tenderness, restricted range of motion or deformity, and no pain behaviors. (Doc. 12, p. 260). Dr. Morse diagnosed Plaintiff with seizure disorder. (Doc. 12, p. 260). He noted that she had poor control recently, and increased her dosage of Lamictal to 500 mg daily. (Doc. 12, p. 260).

On April 8, 2013, Plaintiff again saw Dr. Morse, who reported that Plaintiff had never been on any medicine that gave her good control, and that Plaintiff had side effects from a variety of medications. (Doc. 12, p. 262). Plaintiff was on Lamictal 600 mg daily at that visit, which was the maximum dose he wanted her to use. (Doc. 12, p. 262). Dr. Morse reported that Plaintiff had some cognitive dysfunction, in that she could not multitask, and that she lost her last job because of this. He also noted that Plaintiff could not drive because of her seizures, and that she was applying for disability. (Doc. 12, p. 262). Dr. Morse reported that Plaintiff had what sounded like two partial seizures recently, which she had not had before. (Doc. 12, p. 262). Dr. Morse's impression and plan was complex partial seizures with secondary generalization, intractable. (Doc. 12, p. 263). He was going to add Keppra 500 mg bnid. He discussed side effects, which included drowsiness, dizziness, and irritability. Dr. Morse recommended Plaintiff apply for disability. (Doc. 12, p. 263).

In her Disability Report – Field Office, dated April 12, 2013, SSA field employee, M. Crouch, reported that upon having a face-to-face interview with Plaintiff, Plaintiff had difficulty with concentrating and answering. (Doc. 12, pp. 171-172). It was also reported that Plaintiff was worried she may have a seizure, and commented that she had approximately two seizures per day. M. Crouch reported that Plaintiff seemed to lose her concentration easily. (Doc. 12, p. 172).

In her Function Report – Adult – dated April 29, 2013, Plaintiff reported that she had no problem with personal care, was able to clean, do laundry, perform household repairs, iron, mow, etc., on a daily basis, ride in a car, shop for groceries, watch and play with her grandchildren, mall shop, and visit family. (Doc. 12, pp. 182-185). Plaintiff further reported that she "currently [has] two or more of complex partial seizures a day and around eight grand mal seizures a year." (Doc. 12, p. 189). She reported that she needed further tests to make her seizures less frequent. (Doc. 12, p. 189).

The record contains three statements of third parties, one of which is that of her husband, and all of which indicate they saw Plaintiff have grand mal seizures. (Doc. 12, pp. 198, 200, 202).

Plaintiff also complained to Dr. Morse on April 29, 2013, of intermittent blurry vision and double vision. (Doc. 12, p. 265). Plaintiff was reported as having some stuttering spells, and indicated that if she put her hand over her mouth, it would stop. There was no altered responsivity during these spells. (Doc. 12, p. 265). Dr. Morse noted that it was very difficult to tell if the spells were seizures. (Doc. 12, p. 265).  Dr. Morse reported that upon physical exam, Plaintiff's muscle strength in the upper and lower extremities was normal, as was the muscle tone, and no atrophy or abnormal movements were seen. (Doc. 12, p. 266). He also noted that Plaintiff's recent and remote memory was good, her attention span and concentration were normal, her language showed no aphasia, and her fund of knowledge was appropriate. (Doc. 12, p. 266). All of Plaintiff's cranial nerves were normal. (Doc. 12, p. 266). Plaintiff was reported as having normal range of motion of her cervical and lumbar spine, negative straight leg raise bilaterally, no extremity edema, tenderness, restricted range

of motion or deformity, and no pain behaviors or Waddell signs. (Doc. 12, p. 266). Dr. Morse gave the Impression and Plan as follows:

> Complex partial seizures with secondary generalization, poor control. She may be having some side effects on Keppra. I will drop her dose of Keppra from 1000 to 500 mg daily and see what happens. I told her the only way we will know for sure what is going on would be to do an EEG and perhaps even a video EEG. She states she cannot afford either one of those.
>
> I filled out her paperwork for her disability. I will see her back at her regularly scheduled appointment. She will call and let me know how she does with the dosage change.

(Doc. 12, p. 266).

On April 29, 2013, Dr. Morse also completed a Treating Physician's Report for Seizure Disorder. (Doc. 12, p. 256). He reported that Plaintiff had "complex partial with secondary generalization," and had four grand mal seizures per year and multiple complex partial seizures per year. (Doc. 12, p. 256). Dr. Morse also indicated that the date and results of any EEGs were "remote." (Doc. 12, p. 256).

In a Disability Determination Explanation, dated May 10, 2013, a Physical RFC Assessment was completed by non-examining consultant, Dr. Jim Takach. (Doc. 12, p. 72). Dr. Takach found that Plaintiff had no exertional limitations, could occasionally climb ramps/stairs/ladders/ropes/scaffolds, and that she should avoid even moderate exposure to hazards (machinery, heights, etc.). (Doc. 12, pp. 72-73).

On June 14, 2013, Dr. Morse completed another Treating Physician's Report for Seizure Disorder. (Doc. 12, p. 272). He reported that Plaintiff had complex partial seizures with secondary generalizations, and had four grand mal seizures per year and multiple complex seizures per year. (Doc. 12, p. 272).

On June 21, 2013, a Disability Determination Explanation – Reconsideration, revealed that a Physical RFC Assessment was completed by non-examining consultant, Dr. Ronald Crow, which mirrored Dr. Takach's report. (Doc. 12, p. 83).

In a July 9, 2013 Disability Report – Appeal, Plaintiff reported she had a seizure and fell off a table and hurt her tailbone, and also had a grand mal seizure the prior month and fell and bumped her head and hurt her shoulder. (Doc. 12, p. 233). On August 15, 2013, Plaintiff presented to Mercy Hospital Northwest, complaining, inter alia, of left hip and tailbone pain. (Doc. 12, pp. 278- 279).

### III. Discussion:

The Court finds this matter should be remanded for the following reasons. As noted earlier, on April 29, 2013, Dr. Morse indicated that the only way he would know what was going on with the recently developed complex partial seizures would be to do an EEG and perhaps a video EEG, but Plaintiff was unable to afford either one. Dr. Morse is a neurologist, and has been treating Plaintiff for several years, and the Court believes there are questions relating to: the number of complex partial seizures Plaintiff experiences; whether they would impact her ability to perform substantial gainful activity; and whether they can be controlled by medication. Therefore, the Court directs the Commissioner to obtain an EEG, and to then obtain a Physical RFC assessment from an examining physician.

In addition, there is evidence which indicates that Plaintiff has difficulty with her concentration and attention span. Even a social security employee noted issues relating to her concentration. Therefore, upon remand, the Commissioner is also directed to obtain a Mental RFC Assessment from an examining consultant.

**IV.    Conclusion:**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, reverses and remands this matter to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 23rd day of January, 2017.

/s/ *Erin L. Steer*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE